**In re Robert A. RUTT, SSN: XXX–XX–XXXX, Debtor.**

**No. 07–13448 ABC.**

United States Bankruptcy Court, D. Colorado.

Sept. 10, 2010.

Chuck O. Egbune, Denver, CO, for Debtor.

ORDER DISAPPROVING POST CONFIRMATION MODIFIED PLAN; AND ORDER DENYING MOTION TO DETERMINE SECURED STATUS

A. BRUCE CAMPBELL, Bankruptcy Judge.

Before the Court are the Debtor's Motion to Modify Chapter 13 Plan after Con-

---

firmation ("Motion to Modify"); Debtor's Amended Modified Plan ("Modified Plan"); and Debtor's Motion to Determine Secured Status of Specialized Loan Servicing, LLC ("SLS") Pursuant to 11 U.S.C. § 506 and F.R.B.P. 9014 ("Section 506 Motion"). Debtor seeks to strip off the lien of SLS, the holder of the second mortgage against his residence, and treat it as an unsecured creditor. Debtor's plan, which was confirmed on September 11, 2007, treated the lien of SLS as secured by his residence, and provided that Debtor would pay SLS directly on its claim pursuant to the terms of the loan agreement.

Debtor mailed notice of the time to object to the Modified Plan to a list of creditors and parties in interest which included SLS at the address stated on its proof of claim; and Debtor mailed his Section 506 Motion to SLS at the same address. No responses were filed to either the Motion to Modify or the Section 506 Motion, and the motions are now before the Court. Regardless of the absence of any objection, this Court, as a matter of law, cannot approve the post confirmation modification proposed by the Debtor.

In the Section 506 Motion, Debtor asserts that a recent valuation of his residence, performed on September 11, 2009, showed that his residence is now worth less than the amount of the first mortgage against it. Specifically, the residence is valued as of September 11, 2009 at between $113,886 and $121,945, and the balance on the first, held by Litton Loan Servicing ("Litton"), is approximately $142,473.00.

Debtor further alleges that the lien of SLS is subordinate to Litton's, and that there is no equity to secure any portion of the SLS lien. Consequently, Debtor is seeking to strip the SLS lien based on a

market analysis and assessment of value of the property performed two (2) years after confirmation.

The pertinent facts are taken from the record in this case and are as follows. On September 11, 2007, this Court issued an Order Confirming Amended Chapter 13 Plan ("Order"). The Amended Chapter 13 Plan (Docket # 24), treated SLS as the holder of a claim secured by Debtors' principal residence, and provided that Debtor would pay SLS pursuant to the terms of its loan. Debtor's confirmed plan did not provide for the cure of any arrearage owed to SLS.

In his Schedule D, Debtor lists SLS as having a claim in the amount of $48,610. Based on a scheduled value of his residence of $210,000, less Litton's claim in the amount of $144,783, Debtor scheduled the SLS claim as fully secured.

On April 23, 2007, well prior to confirmation of the plan, SLS filed a proof of claim asserting a fully secured claim in the amount of $50,003.70. SLS asserted it was owed $419.64 for mortgage arrears. Debtor never objected to the proof of claim of SLS.

The issue before the Court is whether a debtor can do post-confirmation that which he could not do, by law, at the time of confirmation of the plan. Specifically, can the debtor make an end run around the anti-modification provisions of section 1322(b)(2) of the Bankruptcy Code, and strip off the lien of a creditor which was secured by the debtor's residence at the time his plan was confirmed, but becomes "unsecured" post confirmation because the value of the residence declines?

The Debtor's Motion to Modify and Section 506 Motion do not reflect that Debtor has considered this question.[1] Rather,

---

1. Debtor's Motion to Modify makes no refer- ence to the proposed change in treatment of

Debtor cites to cases which provide authority for bankruptcy courts to "strip off" junior, wholly unsecured, consensual liens against a debtor's residence when confirming a plan in the first instance. See Debtor's Section 506 Motion at pg. 2, *citing In re Zimmer*, 313 F.3d 1220 (9th Cir.2002); and *Pierce v. Beneficial Mortgage Co. of Utah (In re Pierce)*, 282 B.R. 26 (Bankr. D.Utah 2002). Such case law, however, does not provide authority for what the Debtor proposes now in his Section 506 Motion.

To answer the question presented involves interpreting section 1329(a) of the Code, the section which governs post confirmation modifications of Chapter 13 plans, and section 1327, which speaks to the effect of an order confirming a Chapter 13 plan. Section 1329 of the Code provides in pertinent part:

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided or by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan ...

Section 1327(a) provides that:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or rejected the plan.

The scope of what can be accomplished by a post confirmation modification with respect to a change in treatment of secured creditors has been addressed by several courts. See e.g. *In re Adkins*, 425 F.3d 296 (6th Cir.2005); *In re Nolan*, 232 F.3d 528 (6th Cir.2000); *In re Disney*, 386 B.R. 292 (Bankr.D.Colo.2008); *In re Wright*, 2005 WL 3752230, 2005 Bankr.Lexis 1168 (Bankr.D.Kan.2005); *In re Adams*, 270 B.R. 263 (Bankr.N.D.Ill. E.D.2001); *In re Cruz*, 253 B.R. 638 (Bankr.D.N.J.2000); and *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989). The Tenth Circuit, however, has yet to address this issue. Thus, this Court looks to the reasoning employed by other courts to guide it in determining the case before it.

The Sixth Circuit in *Nolan* analyzes the two sides of the debate with respect to the treatment of secured creditors post confirmation. *In re Nolan*, 232 F.3d at 531–533. Can section 1329(a)(1) be read to permit a debtor to alter, reduce or reclassify a secured claim? Is the reclassification of a claim from secured to unsecured what is contemplated by the language of section 1329(a)(1) which permits a plan to be modified to increase or reduce the amount of payments on claims of *a particular class provided for by the plan?*

The courts which answer that question affirmatively, start from the proposition that each secured creditor is typically in a class by itself. Thus, the argument goes, by reclassifying such a claim from secured to unsecured, the debtor is reducing the amount of payments on such claim as permitted by section 1329(a)(1). See *In re Nolan*, 232 F.3d at 532 citing *In re Jock*,

---

SLS. It merely indicates that Debtor needs to modify his confirmed plan because of a change in jobs and the need to cure mortgage arrears to the holder of the first deed of trust on his residence.

95 B.R. 75, 76 (Bankr.M.D.Tenn.1989). Courts such as the *Jock* court, which read section 1329(a) more expansively, permit a debtor to surrender collateral post confirmation, allow the creditor to sell it, and then permit the debtor to treat any deficiency as an unsecured claim, notwithstanding a confirmed plan which provided for the claim of that creditor as secured.

The Sixth Circuit in *Nolan* rejects such a reading of section 1329(a)(1) and the *Jock* rationale. *In re Nolan*, 232 F.3d at 532. The *Nolan* court interprets that section to

> only afford(s) the debtor a right to request alteration of the amount or timing of specific *payments* . . . . "This section does not state that the plan may be modified to increase or reduce the amount of claims. This is of significance in relation to secured claims." . . . *Jock* fails to note that the terms "claim" and "payment" have two different meanings in the Bankruptcy Code. *In re Nolan*, 232 F.3d at 534 *citing In re Banks*, 161 B.R. 375, 378 (Bankr.S.D.Miss.1993).

Of the cases this Court cites above, only one is on all fours with the case now before the Court, where the debtor retains his residence but seeks to revalue it post confirmation. *In re Cruz*, 253 B.R. 638 (Bankr.D.N.J.2000).[2] The others involve some disposition of a secured creditor's collateral post confirmation, whether by surrender by the debtor, *In re Nolan*, 232 F.3d 528 (6th Cir.2000), or repossession and foreclosure by a secured creditor, *In re Adkins*, 425 F.3d 296 (6th Cir.2005); *In re Disney*, 386 B.R. 292 (Bankr.D.Colo. 2008); *In re Wright*, 2005 Bankr.Lexis 1168 (Bankr.D.Kan 2005); and *In re Adams*, 270 B.R. 263 (Bankr.N.D.Ill.E.D. 2001).

In the case which is on point, *In re Cruz*, 253 B.R. 638 (Bankr.D.N.J.2000), the debtors sought to apply retroactively a decision of the Third Circuit which authorized a strip off of a lien against a debtor's residence at the time of confirmation, notwithstanding the anti-modification provision of section 1322(b)(2) of the Code. *In re McDonald*, 205 F.3d 606 (3d Cir.2000). The debtors in *Cruz* moved for post-confirmation approval to strip off a junior mortgage asserting there was no equity in the residence to support the lien.

The *Cruz* court denied debtors' effort starting its analysis with the standards for confirmation set out in sections 1322(b)(2) (the anti-modification provision), and 1325(a)(5). Section 1325(a)(5) specifies what a court must find with respect to the treatment of each allowed secured claim provided for by the plan in order for the plan to be confirmed. The *Cruz* court concludes that "the value of each secured claim is fixed upon confirmation as of the effective date of the plan." *In re Cruz*, 253 B.R. at 641 *citing In re Meeks*, 237 B.R. 856, 859 (Bankr.M.D.Fla.1999).

The *Cruz* court looked next to binding effect of section 1327(a). "Once a plan is confirmed, it is res judicata to all issues that were or could have been brought prior to confirmation." *In re Cruz*, 253 B.R. at 641 *citing In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989). "After a plan has been confirmed, the Code (at section 1329(a)) provides for specific circumstances in which a confirmed plan can be modified." *In re Cruz*, 253 B.R. at 641. The *Cruz* court concludes that reclassification of a secured claim from secured to unsecured, is not among those circumstances set out in section 1329. "Since the amount and status of a claim is fixed at confirmation, and § 1329 does not permit revaluation of

---

**2.** The Bankruptcy Court for the District of New Jersey issued its opinion in *Cruz* on October 13, 2000. The Sixth Circuit handed down its *Nolan* opinion on October 24, 2000.

collateral or reclassification of claims post-confirmation, the parties are bound by the amount of a secured claim under § 1327 and the amount of the claim must be paid in full." *In re Cruz,* 253 B.R. at 642 *citing In re Coleman,* 231 B.R. 397, 401–02 (Bankr.S.D.Ga.1999); and *In re Meeks,* 237 B.R. at 861–862.

■ This Court has reviewed the cases cited above, and is persuaded by, and adopts, the analysis undertaken by the *Nolan* and the *Cruz* courts. Even though *Nolan* does not involve the effort of a debtor to strip off a lien against a residence post confirmation,[3] its reasoning and logic are compelling. Section 1329(a)(1) cannot be read so expansively as to permit a modification of a secured *claim* provided for in a confirmed plan. Rather, the section should be read more restrictively to permit an adjustment to *payments* on such claims. Section 1329(a)(2) supports that construction. Section 1329(a)(2) authorizes a modification to "extend or reduce the time for *such payments.*"

In the case before this Court, Debtor achieved confirmation of a plan in which he proposed to retain his residence, cure any arrears owed to Litton on its first mortgage, and pay SLS, the second mortgage holder, on its secured claim. Debtor did not move to strip off the lien of SLS. In fact, on the record before the Court, the Debtor could not have prevailed on such a motion because the claim was supported, if not fully, at least partially, by the value of the Debtor's residence. *See Nobelman v.*

*American Savings Bank, et al.,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Debtor's plan was confirmed on that basis.

Debtor could not have achieved confirmation of his plan in the first instance had he proposed to strip off the lien of SLS. Such treatment would have violated both section 1322(b)(2) and section 1325(a)(5). Moreover, he did not propose to do so, and the order of confirmation entered. Thus, Debtor is bound by the terms of his confirmed plan. Section 1327 binds the Debtor, and the secured creditor to the treatment provided for in the confirmed plan. What Debtor now proposes does not fall within the narrow circumstances permitting modification of a confirmed plan under section 1329(a). Debtor is not merely seeking to "increase or reduce the amount of payments on claims of a particular class provided for by the plan;" or "to extend or reduce the time for such payments." Debtor is seeking to strip off the lien of a creditor treated as secured by the confirmed plan and to reclassify it as a general unsecured creditor. Accordingly, it is

ORDERED that Debtor's Motion to Modify is DENIED; and it is

FURTHER ORDERED that Debtor's Section 506 Motion is DENIED; and it is

FURTHER ORDERED that Debtor's Modified Plan is DISAPPROVED.

**3.** In *Nolan,* the debtor had filed a motion to modify her confirmed plan to surrender a vehicle, which she had treated as collateral for a secured claim in her confirmed plan, and which she valued at an amount less than the debt which it secured. In her post confirmation modified plan, the debtor sought to reclassify the deficiency which would result from the secured creditor's sale of the surrendered vehicle as an unsecured claim. The creditor objected asserting its entitlement to

the amount of its secured claim as fixed at the time the plan was confirmed. The Sixth Circuit Court of Appeals agreed with the secured creditor and concluded that section 1329(a) would not permit the modification debtor proposed. The debtor would be required to pay the secured creditor its secured claim as fixed as of the date of confirmation (less any amount it would receive from the sale of the vehicle after surrender).